**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————   x

Cynthia Weisberg, individually on               :
behalf of herself and all others similarly      :
situated,                                       :   Case No.
                                                :
          Plaintiff,                            :
v.                                              :   **CLASS ACTION**
                                                :   **COMPLAINT**
                                                :
Royal Wine Corporation d/b/a Kedem Food         :   **JURY TRIAL DEMANDED**
Products and Kedem LLC d/b/a Kedem              :
Food Products,                                  :
                                                :
          Defendants.                           :
———————————————————   x

       Plaintiff, Cynthia Weisberg (hereinafter "Plaintiff"), individually and on behalf of

all others similarly situated, by her attorneys, alleges the following upon information and belief,

except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

      1.    This action seeks to remedy the deceptive and misleading business practices of

Royal Wine Corporation d/b/a Kedem Food Products and Kedem, LLC d/b/a Kedem Food

Products, (hereinafter "Defendants") with respect to the marketing and sales of Kedem 100%

Pure Grape Juice (hereinafter the "Product") throughout the State of New York and throughout

the country:

      2.    Defendants manufacture, sell, and distribute the Product using a marketing and

advertising campaign centered around claims that their Product is "Pure Grape Juice," when, in

1

fact it contains an additional ingredient, namely potassium metabisulfite, a synthetic preservative.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Product is "Pure Grape Juice" when purchasing it.  Plaintiff and Class Members paid a premium for the Product over and above comparable products that did not purport to be "Pure Grape Juice."  Given that Plaintiff and Class Members paid a premium for the Product based on Defendants' misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendants breached and continues to breach their express and implied warranties regarding the Product.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

5.      As depicted below, Defendants market and advertise the Product as "Pure Grape Juice."

6.      The Product's labeling is depicted below:

2



7.      Defendants' advertising reinforces the Product label's "Pure Grape Juice" claim.

For example, a video used to advertise the Product promotes the idea that grape juice is the only

ingredient in the Product by showing grapes going directly from the vines into the bottles and

3

using the slogan "Kedem, it's about the Grapes."[1]

8.       Defendants' representation that the Product is "Pure Grape Juice" is false, misleading, and deceptive because the Product contains an additional ingredient, namely potassium metabisulfite, a synthetic chemical preservative.

9.       Whether Defendants' labeling of the Product as "Pure Grape Juice" is deceptive is judged by whether it would deceive or mislead a reasonable person.

10.      Merriam-Webster's defines "pure" as "unmixed with any other matter," in other words, containing a single, unadulterated ingredient.

11.      Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "Pure Grape Juice" is misleading to a reasonable consumer because the reasonable consumer believes that the term "pure," when used to describe goods such as the Product, means that the goods are free from ingredients other than grape juice.

12.      By deceiving consumers about the nature, quality, and/or ingredients of the Product, Defendants are able to charge higher prices for the Product, thereby increasing their own profits.

13.      Defendants intended for consumers to rely on their representations, and reasonable consumers did in fact so rely. As a result of their false and misleading labeling and

---

[1] https://www.amazon.com/Kedem-64oz-Concord-Grape Juice/dp/B07ND5F2V6?ref_=bl_dp_s_web_3032710011&th=1

omissions of fact, Defendants were and are able to sell the Product to the general public throughout the United States and to realize sizeable profits.

14.     The front label of the Product prominently displays the representation that the Product is "Pure Grape Juice" and does not reveal that it contains an added preservative, or any additional ingredients whatsoever.

15.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Product in order to confirm or debunk Defendants' prominent front-of-the-Product claim, representation, and warranty that the Product is "Pure Grape Juice"

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Product as "Pure Grape Juice" in prominent locations on the labels of all of the Product, throughout the Class Period, evidences Defendants' awareness that "Pure" claim is material to consumers.

18.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

20.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as

they have already deceived and misled Plaintiff and the Class members.

21.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a Product labeled "Pure" over comparable products not so labeled.

22.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

    a.     Paid a sum of money for a Product that was not what Defendants represented;

    b.     Paid a premium price for a Product that was not what Defendants represented;

    c.     Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendants warranted; and

    d.     Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendants represented.

23.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have purchased the Product or would not have been willing to pay the amount charged for the Product they purchased.

24.     Plaintiff and the Class members paid for a Product that was "Pure Grape Juice" but received a Product that adulterated with an additional ingredient.  The Product Plaintiff and the Class members received was worth less than the Product for which they paid.

25.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Product over the cost of competitive products

6

not bearing a "Pure" label.

26.     Plaintiff and the Class members all paid money for the Product.  However, Plaintiff and the Class members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product.  Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendants are citizens of the State of New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

28.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

29.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiff**

30.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the State of New York.  During the Class Period Plaintiff purchased the Product in a grocery store in Brooklyn, New York in 2019.  The labeling of the Product Plaintiff purchased contained the representation that it was "Pure Grape Juice."  Plaintiff believes that products which are labeled "Pure" are not adulterated with additional ingredients.  If the Product was actually "Pure Grape Juice" as represented on the Product's label, Plaintiff would purchase the Product in the immediate future.

31.     Had Defendants not made the false, misleading, and deceptive representation that the Product was "Pure Grape Juice," Plaintiff would not have purchased the Product or would not have been willing to pay the amount charged for the Product she purchased.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product.  Since the Product Plaintiff received was worth less than the Product for which she paid, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendant**

32.     Defendant Kedem LLC is a corporation with its principal place of business in Bayonne, New Jersey.

33.     Defendant Royal Wine Corporation is a corporation with its principal place of

business in Bayonne, New Jersey.

34.     Defendants grow the grapes for the Product in Marlboro, New York and bottle it in Bayonne, New Jersey.[2]

35.     Defendants market, advertise and distribute the Product in New York and throughout the United States.  Defendants created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

## CLASS ALLEGATIONS

36.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

37.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

38.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass").

---

[2] See https://www.youtube.com/watch?v=v-j3_0OYWNc, describing how the grapes for the Product are grown at Defendants' winery in Marlboro, New York.  Additionally, the back label of the Product states that it is produced in Marlboro. New York.

39.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

40.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41.     <u>Numerosity</u>:  Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

42.     <u>Commonality</u>:  The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.      Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

c.      Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of their Product;

d.      Whether Defendants' false and misleading statements concerning their Product were likely to deceive the public;

e.      Whether Plaintiff and the Class are entitled to injunctive relief; and

f.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

10

43.     <u>Typicality</u>:  Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44.     <u>Adequacy</u>:  Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

45.     <u>Predominance</u>:  Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

46.     <u>Superiority</u>:  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly

11

burdensome, and expensive—if not totally impossible—to justify individual actions;

c.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.     It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase their Product as being "Pure Grape Juice"

47.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## <u>INJUNCTIVE CLASS RELIEF</u>

48.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-

wide injunctive relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in its Product.  Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiff would purchase the Product again if the ingredients were changed so that the Product was indeed "Pure Grape Juice"

49.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.  Numerosity:  Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Product has been purchased by thousands of people throughout the United States;

b.  Commonality:  Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.   Resolution of the issues presented in the 23(b)(3) class;

ii.  Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel their Product as being "Pure Grape Juice"

13

c.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (*i.e.* Defendants' deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendants' Product which was sold unfairly and deceptively to consumers throughout the United States.

d.   <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

50.   The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (*i.e.* Defendants have marketed their Product using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Product.  Plaintiff would purchase the Product again if the ingredients were changed so that the Product was indeed "Pure Grape Juice."

14

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

51.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

52.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

53.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

54.     There is no adequate remedy at law.

55.     Defendants misleadingly, inaccurately, and deceptively advertises and markets their Product to consumers.

56.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Product as being "Pure Grape Juice" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Product and to use the Product when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

15

57.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a product that was—contrary to Defendants' representations— not "Pure Grape Juice."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

58.     Defendants' advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Product and to pay a premium price for it.

59.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

57.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

58.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade or commerce or in the

16

furnishing of any service in this state is hereby declared unlawful.

60.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Product inasmuch as they misrepresent that the Product is "Pure Grape Juice."

62.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Product which was—contrary to Defendants' representations—not "Pure Grape Juice."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

63.     Defendants' advertising, packaging and product labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Product.

64.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus.

17

Law § 350.

66.     Defendants made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Product's packaging and labeling.

67.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendants' material misrepresentations.

68.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and All Class Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     Plaintiff and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

71.     Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

18

a.   **Alaska:**  Defendants' practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:**  Defendants' practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.   **Arkansas:**  Defendants' practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **California:**  Defendants' practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.

e.   **Colorado:**  Defendants' practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendants' practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendants' practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendants' practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i. **Florida:**  Defendants' practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j. **Hawaii:**  Defendants' practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k. **Idaho:**  Defendants' practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l. **Illinois:**  Defendants' acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m. **Indiana:**  Defendants' practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n. **Kansas:**  Defendants' practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o. **Kentucky:**  Defendants' practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p. **Maine:**  Defendants' practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q. **Maryland:** Defendants 'practices were and are in violation of Maryland's

20

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.   **Massachusetts:**  Defendants' practices were unfair and deceptive acts and

practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen.

Laws ch. 93A, § 2.

s.   **Michigan:**  Defendants' practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

t.   **Minnesota:**  Defendants' practices were and are in violation of Minnesota's

Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the

Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq*.

u.   **Missouri:**  Defendants' practices were and are in violation of Missouri's

Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.

v.   **Nebraska:**  Defendants' practices were and are in violation of Nebraska's

Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform

Deceptive Trade Practices Act, § 87-302, *et seq*.

w.   **Nevada:**  Defendants' practices were and are in violation of Nevada's Deceptive

Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendants' practices were and are in violation of New

Hampshire's Regulation of Business Practices for Consumer Protection, N.H.

Rev. Stat. Ann. § 358-A:1, *et seq*.

y.   **New Jersey:**  Defendants' practices were and are in violation of New Jersey's

Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*.

z.   **New Mexico:**  Defendants' practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.

aa.   **North Carolina:**  Defendants' practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq*.

bb.   **North Dakota:**  Defendants' practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq*.

cc.   **Ohio:**  Defendants' practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq*. and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq*.

dd.   **Oklahoma:**  Defendants' practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq*.

ee.   **Oregon:**  Defendants' practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq*.

ff.   **Pennsylvania:**  Defendants' practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

gg. **Rhode Island:**  Defendants' practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:**  Defendants' practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii. **Texas:**  Defendants' practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:**  Defendants' practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:**  Defendants' practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:**  Defendants' practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:**  Defendants' practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*nn.* **Wisconsin:**  Defendants' practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

23

oo. **Wyoming:** Defendants' practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq*.

72.     Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product is "Pure Grape Juice."

73.     Contrary to Defendants' representations, the Product is not "Pure Grape Juice," but, rather, is adulterated with an additional artificial ingredient, potassium metabisulfite.

74.     Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

75.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Product.

77.     As a result of Defendants' violations, Defendants have been unjustly enriched.

78.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

79.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.     Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "Pure Grape Juice."

81.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

82.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

83.     Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Product.

84.     Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiff, on behalf of herself and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure their breach, which they refused to do.

85.     Defendants breached the express warranty because the Product is not "Pure Grape Juice," but rather, is adulterated with an additional artificial ingredient, potassium metabisulfite.

86.     Defendants thereby breached the following state warranty laws:

25

a.       Code of Ala. § 7-2-313;

b.       Alaska Stat. § 45.02.313;

c.       A.R.S. § 47-2313;

d.       A.C.A. § 4-2-313;

e.       Cal. Comm. Code § 2313;

f.       Colo. Rev. Stat. § 4-2-313;

g.       Conn. Gen. Stat. § 42a-2-313;

h.       6 Del. C. § 2-313;

i.       D.C. Code § 28:2-313;

j.       Fla. Stat. § 672.313;

k.       O.C.G.A. § 11-2-313;

l.       H.R.S. § 490:2-313;

m.       Idaho Code § 28-2-313;

n.       810 I.L.C.S. 5/2-313;

o.       Ind. Code § 26-1-2-313;

p.       Iowa Code § 554.2313;

q.       K.S.A. § 84-2-313;

r.       K.R.S. § 355.2-313;

s.       11 M.R.S. § 2-313;

t.       Md. Commercial Law Code Ann. § 2-313;

26

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

27

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

87.     As a direct and proximate result of Defendants' breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Product,

in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and All Class Members)**

88.     Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of all members of the Class.

Upon certification, the Class will consist of more than 100 named plaintiffs.

90.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

91.     The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

92.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

93.     Defendants are the "suppliers" and "warrantors" of the Product within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

94.     Defendants represented in writing that the Product is "Pure Grape Juice."

95.     This statement was made in connection with the sale of the Product and relates to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

96.     As alleged herein, Defendants breached the written warranty by selling consumers a Product that are not "Pure Grape Juice," but rather, is adulterated with an additional artificial ingredient, potassium metabisulfite.

97.     The Product does not conform to Defendants' written warranty and therefore

29

violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(On Behalf of Plaintiff and All Class Members)**

98.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

99.     Defendants are in the business of manufacturing, distributing, marketing and advertising the Product.

100.     Under the Uniform Commercial Code's implied warranty of merchantability, Defendants warranted to Plaintiff and Class Members that the Product is "Pure Grape Juice"

101.     Defendants breached the implied warranty of merchantability in that Defendants' Product's ingredients deviate from the Product's labelling as "Pure Grape Juice," and reasonable consumers expecting a product that conforms to their label would not accept Defendants' Product if they knew that they actually contained ingredients other than grape juice.

102.     Within a reasonable amount of time after Plaintiff discovered that the Product contains additional ingredients other than grape juice, Plaintiff notified Defendants of such breach.

103.     The inability of Defendants' Product to meet the label description was wholly due to Defendants' fault and without Plaintiff's or Class Members' fault or neglect, and was solely

due to Defendants 'manufacture and distribution of the Product to the public.

104.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for Defendants' Product, together with interest thereon from the date of purchase.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of Plaintiff and All Class Members)**

105.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.     Defendants knew or had reason to know that Plaintiff and other Class Members were buying their Product with the specific purpose of buying "Pure Grape Juice" that was not adulterated with additional ingredients.

107.     Plaintiff and the other Class Members, intending to use pure grape juice unadulterated with additional ingredients, relied on Defendants in selecting their Product to fit their specific intended use.

108.     Defendants held themselves out as having particular knowledge of Defendants' Product's ingredients.

109.     Plaintiff's and Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular purpose was reasonable given Defendants' claims and representations in its advertising, packaging and labeling concerning the Product's ingredients.

110.     Plaintiff and the other Class Members' reliance on Defendants in selecting

31

Defendants' Product to fit their particular use was reasonable given Defendants' particular knowledge of the Product it manufactures and distributes.

111.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for Defendants' Product, together with interest thereon from the date of purchase.

**EIGHTH CAUSE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

112.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

113.    Plaintiff, on behalf of herself and consumers nationwide, bring a common law claim for unjust enrichment.

114.    Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Product while misrepresenting and omitting material facts.

115.    Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

116.    Plaintiff and Class Members conferred significant financial benefits and paid

substantial compensation to Defendants for the Product, which was not as Defendants represented them to be.

117.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

118.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Entering injunctive relief against Defendants, directing Defendants to correct their practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c)    Awarding monetary damages, including treble damages;

(d)    Awarding punitive damages;

(e)    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)     Granting such other and further relief as the Court may deem just and proper.


Dated:  September 5, 2019


                                        **THE SULTZER LAW GROUP P.C.**

                                        /**s**/ Joseph Lipari
                                By: _____
                                                     Joseph Lipari, Esq.
                                          14 Wall Street, 20th Floor
                                               New York, NY 10005
                                               Tel: (212) 618-1938
                                               Fax: (888) 749-7747
                                        liparij@thesultzerlawgroup.com

                                        *Counsel for Plaintiff and the Class*

34